**Donald REINERT, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (STROH COMPANIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 4, 2002.
Decided Feb. 11, 2003.

Lawrence D. Levin, Jenkintown, for petitioner.

Katherine M. Lenahan, Scranton, for respondent.

BEFORE: COLINS, President Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Donald Reinert petitions for review of the order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) granting Stroh Companies' (Employer) petition to modify benefits based on Reinert's failure to pursue available employment within his physical restrictions. Reinert raises two issues: whether the Board erred by remanding the WCJ's first decision with instructions for the WCJ to explain the rationale behind her credibility determinations so that the Board could exercise meaningful review and whether the WCJ exceeded the scope of the Board's remand order by reversing her prior credibility determinations instead of explaining the rationale behind them.

Reinert suffered a compensable left-shoulder injury on August 5, 1995 and received total disability payments of $509 per week. In September 1996 Reinert executed a supplemental agreement, indicating that he returned to light-duty work with a loss of earning power but that those

earnings did not reduce his weekly total disability payments. Employer subsequently filed termination, modification and suspension petitions alleging that Reinert was released to work as of April 28, 1997, that work was made available within his restrictions and that he had refused this employment. Employer later amended the date of termination, modification and suspension to November 6, 1996.

Employer presented the testimony of Michael Gray, one of its Human Resource Managers, and of Dr. Brendan O'Brien, board-certified in orthopedic surgery. Gray sent Reinert a letter on May 20, 1997 offering an available position as a production worker in Employer's packaging department beginning June 2, 1997 at $17.07 per hour, plus shift differential. It was within physical restrictions set forth by Dr. O'Brien. After Reinert failed to return to work on June 2, Gray sent him a second letter advising that his employment was terminated as a result of his failure to return to work. With the assistance of a vocational representative, Gray drafted job analyses of various positions and job assignments in Employer's packaging department based on observing employees performing these positions.[1]

Dr. O'Brien testified that he evaluated Reinert on November 1, 1996; he presented with persistent pain in the left side of his neck, pressure over the acromioclavicular joint and pain in the left upper extremity. Dr. O'Brien opined that Reinert had reached maximum medical improvement and still exhibited the results of his rotator cuff injury but that he was capable of performing sedentary to light-duty employment, with restrictions on lifting more than twenty-five pounds and on lifting anything above shoulder level. After reviewing the job descriptions, Dr. O'Brien opined that Reinert was capable of performing the offered positions as of the date of his examination. Formal approval of the offered position was rendered on April 28, 1997.

Reinert testified that he received Gray's letter directing him to return to work on June 2, 1997 but that he did not return to work. Since April 1997 he has been employed by the Golden Oaks Country Club as a seasonal grass cutter, working between twenty-four and twenty-eight hours per week. Reinert stated that he could not perform the positions in Employer's packaging department because they required him to push, pull and reach overhead. Reinert's expert witness Dr. Randy Jaeger, board-certified in orthopedic surgery, performed arthroscopic surgery on Reinert's left shoulder. He testified that Reinert suffered a massive full thickness rotator cuff tear, which was beyond repair. On February 21, 1996, he released Reinert to return to work with a twenty-pound lifting limit and a prohibition against any lifting above shoulder level. The doctor restated those restrictions as of January 21, 1997, but he believed that Reinert could perform the following positions: line three box maker, case unloader operator, case inspector, soaker infeed operator, partition inserter, Filtec operator, keg inspector and label inspector pin setter. However, on May 23, 1997, Dr. Jaeger determined that Reinert could not perform the positions as he demonstrated moderately decreased active motion of the shoul-

---

1. Had Reinert returned to work he would have been placed in one or more of the following assignments: line three box maker; soaker infeed operator; case inspector; Filtec operator; keg inspector; stuffer position; and label inspector pin setter. All of these posi- tions were integral parts of the production department, and Reinert would not have been required to lift more than twenty-five pounds or to lift any item over shoulder level. Employer was willing to accommodate his physical restrictions.

der and increased weakness in some of the muscle groups around the shoulder. Reinert was capable of gainful employment with permanent restrictions on lifting, pushing and pulling more than five pounds with his left arm below shoulder level and on using his left arm at or above shoulder level.

The WCJ denied all of Employer's petitions, concluding that Employer had failed to present evidence that Reinert fully recovered from his work-related injuries and that he was medically capable of performing the light-duty employment made available as of June 2, 1997. The WCJ accepted Gray's testimony as credible, and she accepted Dr. O'Brien's opinion that Reinert was capable of returning to light-duty work as of November 1, 1996 as credible and persuasive. The WCJ accepted Dr. Jaeger's opinions as credible and persuasive but did not render any credibility determinations regarding Reinert's testimony.

The Board vacated the WCJ's order and remanded the case to the WCJ for further credibility determinations and for explanations as to how she reached her result. The Board explained that the 1996 amendments to Section 422 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834, required a WCJ to state his or her reason for accepting evidence and to adequately explain why the WCJ discredited conflicting evidence. The Board concluded that the WCJ failed to comply with these requirements by not making any credibility determinations concerning Reinert's testi-

mony. Additionally, the Board was confused because the WCJ accepted Dr. O'Brien's testimony as well as Dr. Jaeger's testimony as to when Reinert could perform the offered positions.

On remand the WCJ granted Employer's modification petition. The WCJ rejected Reinert's testimony as not credible because as of the date of Employer's offer, both Dr. O'Brien and Dr. Jaeger believed that Reinert was capable of performing several of the offered positions. The WCJ also rejected Dr. Jaeger's testimony because he did not adequately explain how Reinert's condition deteriorated from relative stability from the date of his surgery until May 23, 1997, following receipt of the job referrals. The Board affirmed on appeal, concluding that the WCJ did not exceed the scope of the remand order when she made new credibility determinations because the Board had vacated the WCJ's entire opinion. In addition, the WCJ stated her rationale for rejecting the testimony, which is supported by credible evidence of record.[2]

Reinert first argues that the Board committed an error of law when it remanded the case for further credibility determinations and clarification because the WCJ's first decision was sufficiently well-reasoned for appellate review. Reinert notes that Dr. O'Brien never saw him after November 1, 1996 and that Employer did not offer him the modified position until May 20, 1997. Further, upon receiving the job offer Reinert consulted with Dr. Jaeger, who opined that he could not perform

---

2. The Court's review is prescribed in Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704, which provides that the Court shall affirm unless it determines that the adjudication is in violation of the constitutional rights of the petitioner, that it is not in accordance with law, that provisions relating to practice and procedure of Commonwealth agencies in Sections 501–508 of the Administrative Agency Law, 2 Pa.C.S. §§ 501–508, have been violated or that any necessary finding of fact is not supported by substantial evidence in the record. *See also Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 571 Pa. 109, 812 A.2d 478 (2002).

the offered position. By requiring the WCJ to explain the rationale for her decision, the Board misapplied Section 422 of the Act and exceeded the scope of its appellate review. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 753 A.2d 293 (Pa.Cmwlth.), *appeal granted in part,* 563 Pa. 552, 763 A.2d 369 (2000) (to provide meaningful basis for appellate review, the WCJ's decision must contain all necessary findings and rationale for the decision). Moreover, the WCJ's failure to explain why she rejected certain testimony did not preclude effective appellate review.

 Pursuant to Section 419 of the Act, added by Section 6 of the Act of June 26, 1919, P.L. 642, 77 P.S. § 852, the Board may remand a case when the WCJ's findings are not supported by substantial evidence or when the WCJ fails to make findings on a crucial issue for a proper application of the law. *Craftsmen v. Workers' Compensation Appeal Board (Krouchick),* 809 A.2d 434 (Pa.Cmwlth. 2002). If the Board determines that the WCJ's findings are unclear or do not plainly set forth the basis for rejecting or accepting the claim, the Board may remand and upon remand the WCJ is not precluded from reversing the original decision. *Samuel J. Lansberry, Inc. v. Workmen's Compensation Appeal Board (Switzer),* 168 Pa.Cmwlth. 64, 649 A.2d 162 (1994). The WCJ's original failure to make credibility determinations was significant because the WCJ made no findings of fact nor explained her rationale for concluding that Reinert was unable to perform the modified positions as of May 1997. The Board, therefore, did not err.

 Citing *John A. Miller & Associates, Ltd. v. Workmen's Compensation Appeal Board (DeFelice),* 150 Pa.Cmwlth. 634, 616 A.2d 131 (1992), Reinert next argues that the WCJ exceeded the scope

of the remand order because the Board instructed the WCJ to explain the rationale for her credibility determinations, not to reverse them. This argument is contradicted by the Board's opinion, which clearly explains the basis for its remand and moreover does not restrict the WCJ from reversing her original decision upon making the required credibility determinations. *Craftsmen.* The WCJ, therefore, did not exceed the scope of the remand order. Because the WCJ's findings on remand are supported by substantial evidence, the Court accordingly affirms the Board's order.

### ORDER

AND NOW, this 11th day of February, 2003, the order of the Workers' Compensation Appeal Board is hereby affirmed.