## Monica PREBISH, Petitioner

v.

## WORKERS' COMPENSATION AP-PEAL BOARD (DPW/WESTERN CENTER), Respondent.

Commonwealth Court of Pennsylvania.

Argued May 7, 2008.

Decided July 14, 2008.

---

Robert A. Cohen, Oakdale, for petitioner.

James B. Hudzik, Pittsburgh, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this workers' compensation appeal, Monica Prebish (Claimant) asks whether a Workers' Compensation Judge (WCJ) erred in terminating her workers' compensation benefits. Claimant primarily asserts that after the WCJ and the Workers' Compensation Appeal Board (Board) issued their decisions, our Supreme Court in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 591 Pa. 490, 919 A.2d 922 (2007), clarifying prior case law, held an employer seeking to terminate benefits must show a change in a claimant's physical condition from the time of the last disability determination. Because the Department of Public Welfare/Western Center (Employer) did not meet that burden, Claimant argues, we should deny the termination petition and reinstate benefits. Upon review, we vacate and remand to permit the WCJ to reconsider the existing record in light of *Lewis*.

## I. Facts

Claimant worked for Employer as a residential service aide. In February 1993, Claimant sustained a work injury. Employer subsequently issued a notice of compensation payable (NCP), accepting liability for a "right knee injury." WCJ Op., 12/28/05, Finding of Fact (F.F.) No. 1. Claimant began receiving total disability benefits.

### A. First WCJ Proceedings

In June 2000, Employer filed a petition to terminate benefits alleging Claimant fully recovered from her work injury as of June 7, 2000. Claimant filed an answer denying the allegations, and also filed a review petition seeking to amend the NCP to include a right ankle injury. Additionally, Claimant filed a claim petition alleging she sustained a left and right knee compression injury "to patella and other

structures." WCJ Op., 4/10/02, F.F. No. 5. Employer's termination petition and Claimant's review and claim petitions were consolidated, and hearings ensued before a WCJ (First WCJ).

In April 2002, First WCJ issued a decision denying Employer's termination petition and Claimant's claim and review petitions. First WCJ determined Claimant did not meet her burden of proving the description of the work injury on the NCP was materially incorrect. He also determined Claimant's claim petition was time-barred. Additionally, First WCJ determined that Employer did not prove that Claimant fully recovered or that all disability from the February 1993 injury ceased. Of further note, First WCJ also stated:

> 16. **Resolution of the conflict of evidence, application of the law, and discussion.** Based on a weighing of all of the evidence in this case, I make the following findings of fact, with accompanying discussion:
>
> [E]mployer acknowledged that [C]laimant sustained a right knee injury on February 8, 1993. That [NCP] did not define the injury as a sprain, strain, contusion or otherwise limit the description of injury. Therefore, I infer that [E]mployer intended to accept broad and expansive liability for a right knee injury.

\*   \*   \*   \*   \*   \*

First WCJ Op., 4/10/02, F.F. No. 16(a). Claimant and Employer filed cross-appeals, and the Board affirmed. No further appeal was taken.

### B. Second WCJ Proceedings

In November 2004, Employer filed a second termination, which is the subject of this appeal. Through its petition, Employer asserted as of September 28, 2004, the date Claimant underwent an independent medical examination (IME), Claimant fully recovered from the accepted work injury. Claimant denied the allegations. She further asserted the doctrine of *res judicata* barred Employer from re-litigating the issue of whether she fully recovered because the IME did not establish any change in Claimant's physical condition since First WCJ's decision. Hearings ensued before a WCJ (Second WCJ).

In support of its termination petition, Employer presented the deposition testimony of Dr. Victor Thomas (Employer's Physician), who is board certified in orthopedic surgery. Based on Claimant's history, a review of the pertinent medical records, including diagnostic studies, and the IME, Employer's Physician opined Claimant suffered a sprain/strain of the right knee from which she fully recovered. Employer's Physician also opined that at the time of his examination there was no evidence of any aggravation, Claimant's knee complaints were the same bilaterally, and the examination revealed the same results bilaterally.

Of particular import here, Employer's Physician based his opinions on his examination, on Claimant's current complaints and on medical records and a diagnostic study that post date First WCJ's decision. More specifically, Employer's Physician reviewed numerous x-rays of both of Claimant's knees, including some taken in July 2004, physical therapy notes dated April 1, 2004 through August 3, 2004, and a report from Claimant's medical expert dated January 7, 2005. *See* Reproduced Record at 356a–360a; 367a, 374a–376a. Employer's Physician opined Claimant suffers from patellofemoral arthritis in both knees, but this condition predated the work injury by at least a year-and-a-half. He opined this pre-existing condition could explain the problems Claimant continues to experience in both knees.

In response, Claimant presented the testimony of Dr. David Stone, who is board certified in physical medicine and rehabilitation (Claimant's Physician). Based on his examination and treatment of Claimant, Claimant's Physician opined Claimant suffers patellar subluxation of the right knee, which is related to the work injury. Claimant's Physician further opined Claimant has not fully recovered from her work injury, and she is unable to return to her pre-injury job without restrictions.

Ultimately, Second WCJ granted Employer's termination petition. As to Claimant's argument that the second termination petition was barred *res judicata*, Second WCJ stated:

> [C]laimant's counsel has argued that the doctrine of *res judicata* should apply, preventing [Employer] from re-litigating what was basically determined by [First WCJ] in the prior decision. [C]laimant argues that this is merely a second attempt, producing the same type of evidence as produced before, of [Employer] trying to establish a termination. However, for the following reasons, I find that not to be correct.

> First and foremost, there is the matter of time. In the prior petition, [Employer] alleged that as of June 30, 2000, [C]laimant had fully recovered from her work related injury. The newest petition, the one currently pending before me, contains an allegation that as of September 28, 2004, more than four years after the prior alleged date of recovery, [C]laimant has fully recovered from her work related injury. In addition, contrary to the assertion made by [C]laimant's counsel, I do not find that [First WCJ] found that [Claimant's Physician] was credible in establishing that [C]laimant suffered severe injuries to the right knee. Instead, I find that [First WCJ] made two specific findings.

The first finding made by [First WCJ] in the prior termination petition was that in issuing the [NCP], [Employer] described the injury as a "right knee injury." Therefore, he determined that as this was not limited in any matter [sic], such as describing it as a sprain or a strain, [Employer] was accepting the broad definition of injury to that body part. Accordingly, [Employer] had the burden of proving that [C]laimant had fully recovered from a right knee injury, and to do so, must establish that there was nothing wrong with the right knee, or that any remaining abnormalities were unrelated to the work injury. [First WCJ] then found that [C]laimant, and [Claimant's Physician], were credible to the extent that [their] testimony established that [C]laimant continued to have complaints in the knee. Therefore, he placed the burden on [Employer] to show that the cause of those problems was unrelated to the [work injury]. He found that [Employer] failed to meet this burden. [First WCJ] found that the testimony of [Employer's first medical expert] established that he believed that [C]laimant had no abnormality in the right knee. This was contrary to [First WCJ's] finding that [C]laimant continued to have some problems in that joint, and had pain because of that. Therefore, as the doctor failed to attribute the ongoing problems to something other than the work related injury, [First WCJ] found that [Employer] failed to meet its burden of proving entitlement to a termination of benefits at that time. I particularly note that [First WCJ] was specific in finding that the testimony of [Claimant's Physician] was not credible in establishing the etiology of [C]laimant's ongoing complaints. In addition, he found much of [C]laimant's testimony to be not credible, particularly her assertions that all of her

problems, in addition to the ones with the right knee, were related to the work injury.

Therefore, based upon the above considerations, I find that the doctrine of *res judicata* does not apply in this matter. However, like [First WCJ], I find that [Employer] did accept the broadly defined injury, that being the right knee injury. Therefore, [Employer] again must show that [C]laimant has fully recovered from that broadly defined work related injury. [Employer] can do so by showing that there is nothing wrong with the right knee now, or by showing any remaining symptomology is unrelated to the accepted work related injury.

Second WCJ Op., 12/28/05 at 4–5. Crediting Employer's Physician's testimony, Second WCJ stated: "The evidence of record affirmatively establishes that [C]laimant has fully recovered from her work related injury, and that any remaining symptomology is due to a pre-existing degenerative condition in her right knee, as well as the left knee, which is unrelated to the work injury." *Id.*, Concl. of Law No. 2. Thus, Second WCJ granted Employer's termination petition. Claimant appealed, and the Board affirmed. This appeal followed.[1]

## II. Contentions

On appeal, Claimant argues Employer filed its second termination petition in an attempt to re-litigate First WCJ's determination that she sustained a "serious and disabling" right knee injury. She asserts that Employer, acting through new counsel and basing its petition on a new physician's opinion, filed this second termination petition again alleging she fully recovered.

Claimant contends Employer's Physician did not acknowledge the serious and disabling nature of the injury, and did not offer any testimony supporting a finding of full recovery since First WCJ's decision; rather, Employer's Physician merely reiterated prior expert testimony that she did not suffer a serious and disabling injury. She contends Employer cannot re-litigate First WCJs determination that she suffered a serious and disabling right knee injury. Claimant argues Employer had to produce medical evidence that she recovered from the condition found to exist in the first termination proceeding, and Employer simply failed to do so here.

Employer responds that an initial, unsuccessful attempt to terminate benefits does not preclude a subsequent termination petition based on medical evidence that a claimant recovered as of a date after the first termination decision. Employer further asserts under these circumstances, it need not prove a "change" in Claimant's condition; rather, it need only prove Claimant fully recovered or any disability is due to causes other than the work injury.

In her reply brief, Claimant asserts pursuant to our Supreme Court's recent decision in *Lewis*, Employer was required to prove a change in her condition after First WCJ denied the initial termination petition, and Employer's Physician provided no such testimony here.

## III. Analysis

■ The Workers' Compensation Act (Act)[2] provides that a claimant's benefits may be suspended, modified or terminated

---

1. Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Griffiths v. Workers'*

*Comp. Appeal Bd. (Seven Stars Farm, Inc.),* 596 Pa. 317, 943 A.2d 242 (2008).

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

based on a change in a claimant's disability:

> A[WCJ] designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its [WCJ], upon petition filed by either party with the department, *upon proof that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased* . . . .

Section 413 of the Act, 77 P.S. § 772 (emphasis added).

A review of our Supreme Court's recent decision in *Lewis* is helpful. There, the claimant received benefits pursuant to an NCP. The employer subsequently filed a series of three termination petitions, all of which were denied. Shortly after denial of its third termination petition, Employer filed a fourth termination petition alleging full recovery. The employer's medical expert testified the claimant's work injuries were limited to an acute cervical spine sprain and an acute lumbosacral spine strain, both of which resolved. He further opined that certain additional injuries, which were determined to be work-related in the prior termination decisions, were not related to the work injury. Ultimately, a WCJ credited the testimony of the employer's medical expert and granted the employer's fourth termination petition. Both the Board and this Court affirmed.

Our Supreme Court granted allowance of appeal to consider "whether an employer must demonstrate a change in a claimant's physical condition since the preceding disability adjudication in order to bring a petition to terminate or modify benefits due to a decrease in physical disability." *Id.* at 495, 919 A.2d at 925. Citing *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 252, 532 A.2d 374, 380 (1987), the Court reiterated the four-part test that is to be utilized for an employer to terminate or modify benefits. The first part of the test states: "The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of this ability must first produce medical evidence of a *change in condition*." *Lewis*, 591 Pa. at 496–97, 919 A.2d at 925–26 (quoting *Kachinski*, 516 Pa. at 252, 532 A.2d at 380) (emphasis added). Thus, where an employer seeks to modify or terminate benefits on the basis the claimant's medical condition improved, reducing his disability, the employer bears the burden of showing actual physical improvement. *Lewis*.[3]

"In order to meet its burden under the first prong of the *Kachinski* test, *an employer need only adduce medical evidence that the claimants current physical condition is different than it was at the time of the last disability adjudication*." *Id.* at 501, 919 A.2d at 928 (Emphasis added.) It is not sufficient, nor is it proper, for an employer merely to challenge the diagnosis of a claimant's injuries as determined by a prior proceeding. *Id.* To do so is insufficient to establish the change in condition required by the first prong of *Kachinski*. *Id.* The *Lewis* Court observed, "[a]bsent this requirement 'a disgruntled employer (or claimant) could repeatedly

---

**3.** In order to modify or terminate benefits on the theory a claimant's disability reduced or ceased due to an improvement of physical ability, it is first necessary the employer's petition be based on medical proof of a change in the claimant's physical condition. *Lewis*. "Condition" is not merely the claimant's underlying diagnosis, but any change in the claimant's physical well being affecting his ability to work. *Id.* Only then can the WCJ determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. *Id.*

attack what he considers an erroneous decision of a referee by filing petitions based on the same evidence ad infinitum, in the hope that one referee would finally decide in his favor.'" *Id.* at 497–98, 919 A.2d at 926 (quoting *Dillon v. Workmen's Comp. Appeal Bd. (Greenwich Collieries)*, 536 Pa. 490, 496–497, 640 A.2d 386, 389 (1994); *Banks v. Workmen's Comp. Appeal Bd.*, 15 Pa.Cmwlth. 373, 327 A.2d 404, 406 (1974)). Moreover, such a challenge is barred by the doctrines of *res judicata* and collateral estoppel. *See Lewis.*[4]

Applying these principles to the facts presented, the Court in *Lewis* explained:

In the fourth termination petition, the [e]mployer's [doctor] ... was free to present evidence that [the claimant] had recovered from th[e] injuries [that were determined to be causally related to the work injury]. He did not. Instead, [the employer's doctor] recharacterized [the claimant's] injuries in a manner inconsistent with the prior adjudications. . . .

We conclude that [the employer's doctor's] opinion is not sufficient to meet the first prong of the *Kachinski* test; that the [claimant's] physical condition has changed since the last adjudication. His opinion concedes that [the claimant] was in the same condition, and was, in fact suffering from the same disorders with which he had been previously diagnosed. [The employer's doctor's] opinion merely attempts to recharacterize the cause of those conditions, which ... is barred by issue preclusion. As such, [the][e]mployer has not predicated its fourth termination petition on medical evidence of a change in [the claimant's] physical condition as required by *Ka-*

*chinski.* Without doing so, [the][e]mployer lacked sufficient grounds to maintain the fourth termination petition. It was, consequently, improperly considered by the [WCJ].

*Id.* at 502, 919 A.2d at 929.

Here, Second WCJ credited Employer's Physician's testimony that Claimant fully recovered from her right knee injury and that any remaining symptomology was not work-related. However, it is unclear from Second WCJ's findings whether Employer's Physician's testimony satisfies the standard set forth in *Lewis,* i.e., whether Claimant's physical condition changed from the time of First WCJ's adjudication.

As noted above, Employer's Physician based his opinion in part on Claimant's current complaints of knee pain equal in both knees and on his examination which revealed identical findings in both knees. This may be contrasted with the testimony found credible by First WCJ of complaints and treatments predominating for the right knee. *See* First WCJ Op., 4/10/02, F.F. No. 12. Further, Employer's Physician based his opinion in part on medical records and a diagnostic study which post date First WCJ's decision.

■ A fact-finder could determine that Claimant's condition did not change materially since the time of First WCJ's decision; alternatively, a fact-finder could determine that Claimant's condition changed since First WCJ's decision, returning to a baseline related solely to the preexisting arthritis present in both knees. Because Second WCJ lacked the benefit of *Lewis,* he made no finding as to whether Claim-

4. Of further note, in *Lewis,* the Court expressly overruled its prior decision in *King v. Workmen's Compensation Appeal Board (K–Mart Corp.),* 549 Pa. 75, 700 A.2d 431 (1997). Thus, "to the extent *King* suggests that an employer need not establish a change in a claimant's physical condition since the last disability adjudication in order to successfully raise a modification or termination petition due to a decrease in claimant's physical disability, it is overruled." *Lewis,* 591 Pa. at 500, 919 A.2d at 928.

ant's condition changed since First WCJ's decision. While it was not as clear prior to *Lewis* that such a factual finding was necessary in this context, it is now abundantly clear that such a finding is required. As such, a remand is necessary so that Second WCJ may reconsider the existing record in light of *Lewis*. Therefore, we remand to the Board with instructions to remand to Second WCJ for *reconsideration of the existing record* in light of *Lewis*.[5]

### ORDER

AND NOW, this 14th day of July, 2008, the order of the Workers' Compensation Appeal Board docketed at A06–0090 and A06–0091 and dated January 24, 2007 that affirmed the order of the Workers' Compensation Judge is hereby **VACATED** and this case is **REMANDED** to the Board with the direction that it be further **RE-MANDED** to the WCJ for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

**5.** Claimant also requests attorney's fees in this matter. For a claimant to be awarded litigation costs, the claimant must prevail on the particular issue or petition for which she seeks costs. *Jones v. Workers' Comp. Appeal Bd. (Steris Corp.)*, 874 A.2d 717 (Pa.Cmwlth. 2005). Successful prosecution, in whole or in part, is a statutory prerequisite to an award of costs, including unreasonable contest fees. Section 440(a) of the Act, 77 P.S. § 996(a), authorizes an award to a claimant for a "reasonable sum for [litigation] costs." However, the costs for attorneys fees may be excluded "when a reasonable basis for the contest has been established by the employer or the insurer." *Id.* The reasonableness of a contest is a legal conclusion predicated on the WCJ's findings of fact. *Lemon v. Workers' Comp. Appeal Bd. (Mercy Nursing Connections)*, 742 A.2d 223 (Pa.Cmwlth.1999). Based on our decision to remand this matter in light of *Lewis*, we will allow the WCJ to consider this issue in the first instance on remand.