**DELAWARE COUNTY, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (BROWNE),**
**Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 8, 2008.
Decided Dec. 22, 2008.
Reargument Denied Feb. 19, 2009.

Robert F. Kelly, Jr., Media, for petitioner.

Andrew M. Ominsky, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Delaware County (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which reverses the Workers' Compensation Judge's (WCJ) decision granting Employer's termination petition. We affirm in part, vacate in part and remand.

Mayetta Browne suffered work-related injuries on February 11, 2002, when she was involved in an automobile accident. Employer issued a notice of temporary compensation payable which was later converted to a notice of compensation payable (NCP). Claimant's injuries were described in the NCP as a low back strain and a strain to the right side of the neck. By decision and order circulated on April 13, 2004, WCJ Stokes amended Claimant's injury description to include a cervical disc herniation, cervical radiculopathy, and bilateral carpal tunnel syndrome. WCJ Stokes also denied Employer's termination petition after determining that Employer failed to establish that it was entitled to a termination of benefits as of March 13, 2003.

On June 6, 2005, Employer filed a second termination petition alleging that Claimant had fully recovered from her work-related injuries as of October 14, 2004. On September 26, 2005, Claimant filed a review petition alleging that Employer had refused to pay for recommended Botox injections and Zonalon cream which were related to her work injuries.

On May 30, 2006, Employer filed utilization review request requesting a prospective review of the Botox injection and Zonalon cream treatment recommended by the provider. On August 25, 2006, a utilization review determination was issued wherein the provider's recommended treatment was found to be unreasonable and unnecessary. On September 8, 2006, Claimant filed a utilization review petition seeking review of the prospective treatment at issue.

Hearings before WCJ DiLorenzo ensued. In support of the termination petition, Employer presented the deposition testimony of I. Howard Levin, M.D., and a surveillance videotape. In opposition to the termination petition and in support of her petitions, Claimant testified on her own behalf and presented the deposition testimony of Dennis W. Ivill, M.D. Based on the evidence presented, WCJ DiLorenzo concluded that Employer established its right to a termination of Claimant's benefits as of October 14, 2004. WCJ DiLorenzo further found that Claimant failed to establish that the Botox injections and Zonalon cream recommended by the provider were reasonable and necessary. Accordingly, WCJ DiLorenzo granted Employer's termination petition and denied Claimant's review petition.

Claimant appealed WCJ DiLorenzo's decision to the Board. Upon review, the Board affirmed in part and reversed in part. The Board affirmed WCJ DiLorenzo's decision denying Claimant's review pe-

tition[1] but reversed her decision granting Employer's termination petition.

The Board determined based on our Supreme Court's decision in *Lewis v. Workers' Compensation Appeal Board (Giles & Ransome, Inc.)*, 591 Pa. 490, 919 A.2d 922 (2007), that Employer failed to establish that Claimant's physical condition had changed since WCJ Stokes' April 13, 2004 decision; therefore, the WCJ erred by granting Employer's termination petition. The Board pointed out that it is now clear under *Lewis*, that an employer's burden of proof in a subsequent termination petition proceeding is to present medical evidence to establish an actual change in the claimant's physical condition since the last termination proceeding. The Board reasoned that the decision in *Lewis* did not simply allow a change in condition to be satisfied by a medical opinion of full recovery but instead required proof that the claimant's condition was different since the time of the last disability adjudication. The Board determined that WCJ DiLorenzo's findings in this matter fell short of the standard required by *Lewis*. Specifically, the Board stated as follows:

> [WCJ DiLorenzo's] finding that Claimant's hands were better since surgery in 2002, and physical therapy on an unspecified date before October 14, 2004 did not establish the requisite change in condition since the last disability adjudication in 2004. Indeed a later finding discusses the absence of numbness and tingling in Claimant's upper extremities at the time of examinations in 2003, and early 2004. The same defect underlies

[WCJ DiLorenzo's] findings that Claimant did not have any evidence of cervical radiculopathy when examined by Dr. Levin. To this end, [WCJ DiLorenzo] discusses examination findings preceding WCJ Stokes' [April 13,] 2004 decision.

> As to the findings of cervical disc herniations, [WCJ DiLorenzo] found Claimant had long standing degenerative disease and changes, thereby disregarding the cervical herniation finding of WCJ Stokes. Even assuming that [WCJ DiLorenzo] could circumstantially find a change in condition regarding the carpel tunnel syndrome and radiculopathy based on Dr. Levin's October 14, 2004 examination of Claimant, her finding disregarding the prior adjudication finding of a disc herniation, unquestionably is no longer permitted by *Lewis*. Therefore, we are constrained to reverse [WCJ DiLorenzo's] grant of [Employer's] Termination Petition based on *Lewis*.

Board Opinion at 8–9.

 This appeal by Employer followed.[2] Herein, Employer raises the following issues: whether WCJ DiLorenzo's decision granting Employer's termination petition is supported by substantial competent evidence; and whether the Board erred in substituting their own fact finding, not considering the deposition testimony of Dr. Levin as a whole, and in its interpretation of the applicable case law.

In support of its appeal, Employer argues that there is no doubt that WCJ DiLorenzo's decision is supported by sub-

---

1. The Board rejected Claimant's argument that WCJ DiLorenzo erred in failing to separately address the utilization review petition. The Board determined that since the issue presented in the utilization review petition was the same as that presented in the review petition, that being whether the provider's recommended Botox injections and Zonalon cream treatment was reasonable and necessary, and WCJ DiLorenzo addressed this issue, she was not required to separately address the utilization review petition.

2. Claimant did not appeal the denial of her review petition.

stantial evidence as it is based on the entire credible testimony of Dr. Levin that Claimant is fully recovered from her work-related injuries as of October 14, 2004. Employer argues further that the Board's determination that the Supreme Court's decision in *Lewis* does not allow a change in condition to be satisfied by a medical opinion of full recovery is both internally inconsistent and a mischaracterization of the holding in *Lewis*. This determination also contradicts the Workers' Compensation Act[3] (Act) which clearly states that the burden in a termination proceeding is satisfied by a medical opinion of full recovery. Employer contends that contrary to the Board's interpretation, *Lewis* did not change the burden of proof in a termination proceeding, it merely clarified it to make the case law consistent with the Act.

We begin with a review of our Supreme Court's decision in *Lewis* wherein the claimant suffered work-related injuries when the forklift he was operating fell off the back of a truck. The claimant began receiving workers' compensation benefits pursuant to a notice of compensation payable.

Thereafter, the employer filed its first termination petition alleging full recovery on April 23, 1990. By decision of July 12, 1993, the WCJ denied the termination, finding that the claimant suffered from a C8–T1 radiculopathy and that he had an underlying congenital syrinx and an Arnold–Chiari formation that had been aggravated by the work injury.

The employer filed a second termination alleging full recovery on January 4, 1994. By decision of August 28, 1997, the WCJ denied the second petition, finding that in addition to the previously recognized disorders, the claimant was also suffering from an L5–S1 radiculopathy that was related to the work injury.

The employer filed a third termination alleging full recovery on April 19, 1999, and the claimant filed a petition to review the notice of compensation payable wherein the claimant sought a determination that his left knee injury was also caused by his work related injuries. By decision of November 30, 2001, the WCJ denied the employer's third termination petition and added the claimant's left knee condition as a causally related injury. The WCJ's decision was affirmed by the Board on December 9, 2002.

Three days later, on December 12, 2002, the employer filed a fourth termination petition again alleging full recovery. In support of the fourth termination petition, the employer's medical expert opined that the claimant had fully recovered as of November 6, 2002. This opinion was based on the expert's examination of the claimant and a review of the diagnostic tests and evaluations performed on the claimant on or before December 15, 2000. The medical expert opined that: (1) the claimant's work-related injuries were limited to an acute cervical spine sprain and an acute lumbosacral spine strain, both of which had healed; (2) the claimant's Arnold–Chiari malformation and syrinx were completely unrelated to the work injury; (3) he saw no objective evidence for the claimant's radiculopathy; and (4) the claimant's knee injury was not work-related but caused by patellofemoral degenerative osteoarthritis.

By decision of July 2, 2004, the WCJ issued an order granting the employer's fourth termination petition based on the credible testimony of the employer's medical expert. Accordingly, the WCJ found that the claimant had fully recovered as of

---

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

November 6, 2002, the date of the employer's medical expert's examination. The Board affirmed on appeal. On further appeal to this Court, we also affirmed.

The Supreme Court granted review to consider "whether an employer must demonstrate a change in condition since the preceding disability adjudication in order to bring a petition to terminate or modify benefits due to a decrease in physical disability." *Lewis,* 591 Pa. at 495, 919 A.2d at 925. In deciding this issue, the Supreme Court reasoned as follows:

> The Workers' Compensation Act provides that a claimant's benefits may be modified or terminated based upon a change in claimant's disability:
>
> A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employee has increased, decreased, recurred, or has temporarily or finally ceased ...
>
> 77 P.S. § 772 (in relevant part) (emphasis added). Thus, a workers compensation judge may modify or terminate benefits when it has been demonstrated that the claimant's disability has changed.
>
> In *Kachinski v. WCAB (Vepco Construction Co.),* 516 Pa. 240, 532 A.2d 374 (1987), this Court outlined a four-part test that must be employed in order for an employer to modify or terminate workers compensation benefits. The first part of the test which states: "The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of this ability must first produce medical evidence of a

change in condition." *Kachinski, 532 A.2d at 380.* Therefore, where an employer seeks to modify or terminate benefits on the basis that the claimant's medical condition has improved, reducing his disability, the employer bears the burden of demonstrating actual physical improvement. *See Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries),* 536 Pa. 490, 640 A.2d 386 (1994).

> It is instructive to note the differences in language between the terms of the Act and our decision in *Kachinski.* Whereas the Act refers to a change of disability, *Kachinski* speaks of a change of condition. The two terms are not synonymous. This Court has defined "disability" in the workers' compensation context as "loss of earning power." *City of Philadelphia v. WCAB (Szparagowski),* 574 Pa. 372, 831 A.2d 577, 585 (2003) *(quoting Landmark Constructors, Inc. v. Workers' Compensation Appeal Bd. (Costello),* 560 Pa. 618, 747 A.2d 850, 854 (2000)).* "Change of condition," on the other hand, is any change in the claimant's physical well being that affects his ability to work. *City of Philadelphia,* 831 A.2d at 585. It can be the total recovery from an illness or merely that the symptoms subside. *Id.*

> In order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition. Only then can the workers' compensation judge determine whether the change in physical condition has effectuated a change in the claimant's disability, i.e., the loss of his earning power. Further, by natural extension it is necessary that, where there have been prior petitions to

modify or terminate benefits, the employer must demonstrate a change in physical condition since the last disability determination. Absent this requirement "a disgruntled employer (or claimant) could repeatedly attack what he considers an erroneous decision of a referee by filing petitions based on the same evidence ad infinitum, in the hope that one referee would finally decide in his favor." *Dillon, 640 A.2d at 389 (quoting Banks v. Workmen's Compensation Appeal Board,* 15 Pa.Cmwlth. 373, 327 A.2d 404, 406 (1974)).

Once an employer sets forth the change in physical condition required to properly bring a petition to terminate benefits, it still bears a high burden. Disability is presumed until demonstrated otherwise and it is the employer's burden to prove that "all disability related to a compensable injury has ceased." *Pieper v. Ametek–Thermox Instruments Division,* 526 Pa. 25, 584 A.2d 301, 304 (1990). Likewise, in a similarly lodged petition to modify benefits the employer must prove that the improvement in employee's physical condition has reduced the degree of disability. *See e.g. Dillon, supra.*

. . . .

In order to meet its burden under the first prong of the *Kachinski* test, an employer need only adduce medical evidence that the claimant's current physical condition is different than it was at the time of the last disability adjudication. It is not sufficient, nor is it proper, for an employer merely to challenge the diagnosis of claimant's injuries as determined by a prior proceeding. To do so is insufficient to establish the change in condition required by the first prong of *Kachinski.*

*Id.* at 496–501, 919 A.2d at 925–29 (footnotes omitted).

In applying the facts as presented in *Lewis* to the correct legal framework as set forth in *Kachinski,* the Supreme Court determined that the WCJ improperly considered the fourth termination filed by the employer. Specifically, the Supreme Court explained:

In this case, as of the time of the fourth termination petition, [Claimant's] disability had been previously adjudicated as resulting from a work-related C8–T1 and L5–S1 radiculopathy, a congenital syrinx and Arnold–Chiari malformation which had been aggravated by the work-related injury, and a left-knee condition causally related to the work-related injury. In the fourth termination petition, the Employer's expert, Dr. Stein, was free to present evidence that [Claimant] had recovered from these injuries. He did not. Instead, Dr. Stein recharacterized [Claimant's] injuries in a manner inconsistent with the prior adjudications. He claimed that [Claimant's] knee injury was caused by a degenerative condition and is completely non-work related. He stated the same regarding [Claimant's] syrinx and Arnold–Chiari malformation. As to the radiculopathies, Dr. Stein opined that there was no objective evidence supporting their existence. Dr. Stein's diagnosis was that [Claimant's] work-related injuries were limited to an acute cervical spine sprain and an acute lumbrosacral spine strain, from which he had completely recovered.

We conclude that Dr. Stein's opinion is not sufficient to meet the first prong of the *Kachinski* test; that the [Claimant's] physical condition has changed since the last adjudication. His opinion concedes that [Claimant] was in the same condition, and was, in fact suffering from the same disorders with which he had been previously diagnosed. Dr.

Stein's opinion merely attempts to re-characterize the cause of those conditions, which, as explained above, is barred by issue preclusion. As such, Employer has not predicated its fourth termination petition on medical evidence of a change in [Claimant's] physical condition as required by *Kachinski*. Without doing so, Employer lacked sufficient grounds to maintain the fourth termination petition. It was, consequently, improperly considered by the workers' compensation judge.

*Id.* at 502, 919 A.2d at 929.

Accordingly, the Supreme Court reversed this Court's decision in *Lewis*. Recently, this Court explained the Supreme Court's decision:

Faced with an employer that filed serial termination petitions, the Supreme Court in *Lewis* was concerned that such an employer would recharacterize or disregard the prior adjudicated facts in these serial petitions in order to realize a favorable outcome. It goes without saying that an employer may not, for example, present expert testimony that a claimant's condition, which is unchanged, is not actually work-related as previously adjudicated. Rather, the employer must accept the adjudicated condition and prove recovery from it at a later date; this is what is meant by showing a physical change of condition.

*Folmer v. Workers' Compensation Appeal Board (Swift Transportation)*, slip op. at 10, 958 A.2d 1137 (Pa.Cmwlth.2008).

■ Herein, we first address the Board's determination that the decision in *Lewis* does not simply allow a change in condition to be satisfied by a medical opinion of full recovery but instead requires proof that the claimant's condition was different since the time of the last disability adjudication. As pointed out in *Lewis*, "[i]n order to terminate benefits on the theory that a claimant's disability has reduced or ceased due to an improvement of physical ability, it is first necessary that the employer's petition be based upon medical proof of a change in the claimant's physical condition." *Id.* at 497, 919 A.2d at 926. The Court in *Lewis* defined "change of condition" as "any change in the claimant's physical well being that affects his ability to work." *Id.* The Court stated further that "[i]t can be the total recovery from an illness or merely that the symptoms subside." *Id.*

■ Therefore, if an employer comes forward with credible medical evidence that the claimant's current physical condition is different than it was at the time of the last disability adjudication due to a total recovery from the recognized work-injury, such medical evidence would satisfy the employer's burden of proving a change in the claimant's physical condition. In other words, by accepting the employer's medical evidence of a full recovery as credible, a WCJ could properly make a finding that the employer has met the standard set forth in *Lewis* by demonstrating a change in Claimant's condition. However, as this Court recently held in *Prebish v. Workers' Compensation Appeal Board (DPW/Western Church)*, 954 A.2d 677 (Pa. Cmwlth.2008), the WCJ must make that factual finding.

In *Prebish*, the issue was whether, in light of the decision in *Lewis*, the employer met its burden of showing a change in the claimant's physical condition from the time of the last disability determination in order to obtain a termination of the claimant's benefits. This Court pointed out that the second WCJ credited the employer's physician's testimony that the claimant had fully recovered from the accepted work injury to her right knee and that any remaining symptomology was not work-related. However, it was unclear from the

second WCJ's findings whether the employer's physician's testimony satisfied the standard set forth in *Lewis,* i.e., whether the claimant's physical condition changed from the time of the first WCJ's adjudication. This Court specifically held that "[w]hile it was not as clear prior to *Lewis* that such a factual finding was necessary in this context, it is now abundantly clear that such a finding is required." *Prebish,* 954 A.2d at 684.

Accordingly, the Board's determination was correct. A simple finding of full recovery is not sufficient—there must be a factual finding that a claimant's physical condition changed from the time of the last disability adjudication.

In this case, Employer alleged in the first termination petition that Claimant had fully recovered as of March 13, 2003. However, WCJ Stokes denied Employer's first termination petition in a decision issued April 13, 2004. In that decision, WCJ Stokes also amended the NCP to include the additional injuries of cervical disc herniation, cervical radiculopathy and bilateral carpal tunnel syndrome. Therefore, pursuant to *Lewis,* Employer had the burden of proving, through the presentation of medical evidence, a change in Claimant's physical condition between March 13, 2003 and October 14, 2004, the date when Employer alleged in its second termination petition that Claimant had fully recovered from her work-related injuries. As stated in by this Court in *Folmer,* "Employer's case had to begin with the adjudicated facts found by the WCJ in the first termination petition and work forward in time to show the required change." *Folmer,* 958 A.2d at 1142 (citing *Lewis,* 591 Pa. at 501, 503, 919 A.2d at 928–929).

In this regard, WCJ DiLorenzo also had to accept WCJ Stokes' findings of fact that Claimant's work-related injuries included cervical disc herniation, cervical radiculopathy and bilateral carpal tunnel syndrome. However, while WCJ DiLorenzo acknowledged that WCJ Stokes amended the NCP to include these additional injuries, she clearly disregarded WCJ Stokes' prior adjudication of April 13, 2004. Specifically, WCJ DiLorenzo disregarded WCJ Stokes' prior finding that Claimant suffered from a work-related cervical disc herniation and finds to the contrary in finding of fact number 42, which states:

> Regarding the cervical disc herniations, Dr. Levin testified, and the Judge finds that the Claimant's findings on her MRI were long standing degenerative disease and that the Claimant had degenerative changes in her cervical spine and thoracic spines in accordance with an x-ray of her cervical spine on August 31, 2001.

In addition, WCJ DiLorenzo's finding of full recovery is based upon the credible testimony of Dr. Levin. However, Dr. Levin's opinions with regard to Claimant's full recovery are based, in part, on medical records, diagnostic tests, and physical examinations that pre-date Employer's allegation of full recovery as of March 13, 2003 in its first termination petition. Moreover, on more than one occasion, Dr. Levin questioned WCJ Stokes' determination that Claimant's injuries were the result of the work-related automobile accident. Reproduced Record (R.R.) at 83a–103a.

Accordingly, WCJ DiLorenzo erred by disregarding the previously adjudicated work-related injuries suffered by Claimant. In addition, because WCJ DiLorenzo did not have the benefit of our Supreme Court's decision in *Lewis* and this Court's decision in *Prebish,* she did not make the required finding as to whether Claimant's condition had changed between the period March 13, 2003, the first date that Employer alleged full recovery, and October 14, 2004, the second date that Employer

alleged full recovery. Therefore, a remand is necessary so that WCJ DiLorenzo may reconsider the existing record in light of *Lewis.*

Accordingly, the portion of the Board's order reversing WCJ DiLorenzo's decision granting Employer's termination petition is vacated and this matter is remanded to the Board with instructions to remand to WCJ DiLorenzo for reconsideration of the existing record in accordance with *Lewis.* The Board's order is affirmed in all other respects.

### *ORDER*

AND NOW, this 22nd day of December, 2008, the order of the Workers' Compensation Appeal Board in the above captioned matter is vacated and this case is remanded to the Board with direction that it be further remanded to the WCJ for proceedings consistent with this opinion. The Board's order is affirmed in all other respects.